# UNITED STATES OF AMERICA
# DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| Tanya Cormier, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. |
| Herb Chambers of ) | |
| Westborough, Inc., d/b/a ) | |
| Herb Chambers and ) | |
| George Asare ) | |
| ) | |
| Defendants ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Parties

1. Tanya Cormier is an individual residing at 113 Central Street in the town of Milford, Worcester County, Massachusetts.

2. Herb Chambers of Westborough, Inc., d/b/a Herb Chambers of Westborough (hereinafter referred to as "Herb Chambers" or "the Dealership") is a corporation duly registered under the laws of the Commonwealth of Massachusetts with a principal place of business located in the town of Westborough, Worcester County, Massachusetts.

3. George Asare is an individual who resides, upon information and belief, in the city of Worcester, Massachusetts.

### Statement of Jurisdiction and Venue

4. Jurisdiction is proper in this Court because it is a federal cause of action for violation of 42 U.S.C. §2000e et., seq., also known as Title VII.

5. The plaintiff has met all jurisdictional prerequisites to filing suit by filing the claim first with the Massachusetts Commission Against Discrimination/ Equal Employment Opportunity Commission and then obtaining the Right-to-Sue.

6. Venue is proper in the central district because one or more parties to the action reside in Worcester County and all events giving rise to the cause of action occurred within Worcester County.

**Statement of Facts**

7. Defendant Herb Chambers of Westborough is an auto dealership that is part of a large and highly profitable network of independently incorporated dealerships that operate under variations of the name "Herb Chambers" throughout central Massachusetts.

8. Ms. Cormier was, at all relevant times to this Complaint, employed by the defendant, Herb Chambers, as contemplated by Title VII and M.G.L. c. 151B.

9. George Asare was, at all relevant times to this Complaint, an employee of the defendant, Herb Chambers, and a supervisor of Ms. Cormier's, as contemplated by Title VII and M.G.L. c. 151B.

10. For the past several years, Mr. Asare has been one of the top earning salesman, if not the top earning salesman, for the entire network of Herb Chambers dealerships.

11. Shortly after starting her employment, Ms. Cormier was invited out to eat by Mr. Asare. She told him that she was very impressed by his sales figures and his ability to earn the "MVP" award every month. She asked him if he could train her and teach her to become successful at auto sales. He agreed.

12. During that first dinner meeting, Mr. Asare told Ms. Cormier that she had been hired to be his girlfriend.

13. Over the following weeks, Ms. Cormier went out with Mr. Asare and other employees on several occasions. During those social events, Mr. Asare with flirt with her and make sexual overtures towards her.

14. On multiple occasions, he would brag about his salary and that "Herb" [Chambers] was wrapped around his little finger. He boasted that he could get away with whatever he wanted as long as he continued to sell cars.

15. Mr. Asare and Ms. Cormier engaged in a mutually consensual sexual relationship for several months until August 2014, when she learned he was married and ended the relationship.

16. After that, Mr. Asare created a sexually hostile environment for Ms. Cormier from September 2014 through January 2015, by making sexual jokes towards Ms. Cormier, making sexual comments towards her, commenting on her appearance and physique, touching her inappropriately, sexually propositioning her, and spreading false rumors of a sexual nature about her.

17. By way of example, and not limitation, Mr. Asare would make multiple comments per day such as:

    a. "I want you in my bed;"

    b. "I miss you in my bed;"

    c. "I miss you;"

    d. "Your tits look great;"

    e. "Your breasts look so good in that shirt;"

    f. Your legs look good;"

    g. "Your ass looks great in those pants;" and

    h. "You are nice and firm, just the way daddy likes it."

18. Mr. Asare would make these comments several times per day, often in the presence of other employees and managers.

19. Multiple times per week, Mr. Asare would grab Ms. Cormier by the waist and pull her buttocks towards his crotch in order to rub his penis against her buttocks as he made sexually suggestive comments.

20. Ms. Cormier repeatedly and adamantly told Mr. Asare to stop his behavior, that it was unacceptable, and that she would report him to the police.

21. In order to prevent the harassment, Ms. Cormier changed how she dressed for work in order to prevent his advances. She would try to stay around other employees and never be left alone with Mr. Asare.

22. She could not focus on her work nor could she maintain the demeanor and concentration necessary to effectively interact with potential customers in order to sell cars.

23. One manager at the dealership also changed his behavior towards Ms. Cormier after she ended her relationship with Mr. Asare.

24. The manager, who claimed to be a body builder, would show her photos of himself in a thong despite her repeated statements to him to stop.

25. Similarly, the manager spoke to her in harsh, degrading, and humiliating ways. For example, he would scream at her in front of co-workers and customers, often using profanity. He would say things like "shut the fuck up" and "you do not speak…you listen."

26. The manager did not speak to Ms. Cormier in this way or behave towards her in this way until after she ended the relationship with Mr. Asare and after Mr. Asare began publically harassing her.

27. On or about January 14, 2015, Mr. Asare grabbed Ms. Cormier from behind, reached his arms around her, and grabbed her breast. He did this in front of a male co-worker.

28. Later, he cornered her alone in an office and told her "those tits are nice and firm; you were always nice and firm, just like daddy likes it."

29. At approximately the same time, Mr. Asare learned that Ms. Cormier was in a committed relationship with another man.

30. Mr. Asare approached the other man and told him that he and Ms. Cormier had sex in the past, that she was promiscuous and had engaged in sexual relationships with five other employees at the dealership, that she had sexually transmitted diseases, and that she was "HIV positive." Other than the consensual relationship with Mr. Asare, all of these allegations were false.

31. Ms. Cormier reported the incidents to an HR representative from Herb Chambers.

32. Ms. Cormier also reported the January 14, 2015 assault to the police.

33. Herb Chambers hired an "independent" investigator: a large corporate law firm well known in the area for defending corporations in employment matters.

34. The Dealership's attorney met with Ms. Cormier. During that meeting, she identified several witnesses to the harassment she endured including, but not limited to, the man who witnessed the indecent assault.

35. Upon information and belief, the dealership's attorney did not interview those witnesses.

36. Instead, the attorney interviewed Mr. Asare who admitted, in part, to his harassment of Ms. Cormier. As a result, the attorney concluded that her claim of assault "could not be corroborated." Nor could the dealership's attorney confirm that Mr. Asare had made false and disparaging statements that Ms. Cormier "had aids."

37. At the conclusion of the investigation, Mr. Asare was given a written warning for "making comments of a sexual nature" based solely on his admission(s) that he made comments about Ms. Cormier's body.

38. Other than the written warning, Mr. Asare was allowed to return to work alongside Ms. Cormier without restriction or punishment.

39. During the proceedings before the Massachusetts Commission Against Discrimination a general manager at the dealership named Tom Quiirk signed a Position Statement, under oath, in which he alleged that:

    a. Ms. Cormier had engaged in sexual relationships with five employees of the dealership;

    b. Ms. Cormier's allegation of assault was untruthful (despite Herb Chambers' express knowledge that its own employee witnessed the assault);

    c. The reason Ms. Cormier made the false allegation was because she is "a woman scorned…"

40. The police and district attorney's office also investigated Ms. Cormier's complaint. Except they, unlike the dealership's lawyer, talked to the witnesses identified by Ms. Cormier.

41. One witness, a decorated military veteran and long-time employee of the dealership confirmed that he witnessed Mr. Asare grab Ms. Cormier's breasts without her consent, that she appeared shocked and humiliated, that she immediately left the area, and that Mr. Asare appeared to find the entire event humorous.

42. That witness also told the police that he personally reported the incident to a manager at the dealership and that he was shocked and disappointed that he was never interviewed in connection with the so-called "independent investigation" of her allegations.

43. Ms. Cormier was told to return to work, alongside Mr. Asare, and was offered no transfer or assurance that she would be safe at work. Faced with the impossible decision of returning to work alongside her harasser or assailant versus leaving her job, Ms. Cormier chose the latter.

44. On February 18, 2016, approximately five weeks after the dealership (in a sworn statement) told the MCAD that Ms. Cormier was untruthful, promiscuous, and "a woman scorned," Mr. Asare admitted to sufficient facts to warrant a finding of guilty ("Continued Without a Finding" or "CWOF") in the Worcester District Court for committing the crime of Indecent Assault and Battery against Ms. Cormier.

45. The dealership made no effort to correct Mr. Quirk's sworn statement before the MCAD.

46. As a result of the conduct alleged herein, the plaintiff has suffered extreme emotional distress manifested physically by depression, anxiety, loss of self-esteem, sleeplessness, and other extreme and severe symptoms that have required medical treatment.

## CLAIMS

## CLAIMS AGAINST HERB CHAMBERS OF WESTBOROUGH, INC., D/B/A HERB CHAMBERS OF WESTBOROUGH

### Count I – Sexual Harassment in violation of M.G.L. C. 151B

47. The plaintiff incorporates all previous paragraphs by reference as if fully stated herein.

48. The defendant did, through the facts described herein, subject the plaintiff to a sexually hostile work environment in which unwanted and unwelcome sexual conduct was so severe and pervasive that a reasonable person would consider it intimidating, hostile, and/or abusive.

49. The defendant did, when made aware of the harassment, fail to promptly and reasonably investigate the harassment, failed to take remedial measures to prevent further harassment, and instead conducted a sham investigation that was intended to discredit Ms. Cormier and to protect Mr. Asare and the corporate entity from liability.

50. As a result, the plaintiff did suffer and continues to suffer damages.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

### Count II – Retaliation in Violation of M.G.L. c. 151B

51. The plaintiff incorporates all previous paragraphs by reference as if fully stated herein.

52. The plaintiff engaged in a protected activity when she made a formal complaint about sexual harassment to her employer.

53. The defendant retaliated against her by engaging in adverse and material work actions against her, including subjecting her to a fraudulent, demeaning, and defamatory "investigation," and by permitting the hostile work environment to continue and constructively discharging her from her employment by forcing her to work alongside a man who sexually assaulted her at the work-place.

54. As a result, the plaintiff has suffered and continues to suffer damages.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

### Count III - Wrongful Termination In Violation of M.G.L. C. 151B

55. The plaintiff incorporates all previous paragraphs by reference as if fully stated herein.

56. The defendant did, through the facts described herein, subject the plaintiff to a sexually hostile work environment in which unwanted and unwelcome sexual conduct was so severe and pervasive that a reasonable person would consider it intimidating, hostile, and/or abusive.

57. The defendant did, when made aware of the harassment, fail to promptly and reasonably investigate the harassment when it conducted a sham investigation that was intended to discredit Ms. Cormier and to protect Mr. Asare.

58. As a result, the plaintiff could not be expected to return to such an environment and was constructively discharged from her employment either because she refused to subject herself to a hostile work environment and/or because she refused to engage in sexual relations with Mr. Asare and/or in retaliation for making a complaint about sexual harassment.

59. As a result, the plaintiff did suffer and continues to suffer damages.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

### Count IV– Sexual Harassment in Violation of Title VII

60. The plaintiff incorporates all previous paragraphs by reference as if fully stated herein.

61. The defendant did, through the facts described herein, subject the plaintiff to a sexually hostile work environment in which unwanted and unwelcome sexual conduct was so severe and pervasive that a reasonable person would consider it intimidating, hostile, and/or abusive.

62. The defendant did, when made aware of the harassment, fail to promptly and reasonably investigate the harassment when it conducted a sham investigation that was intended to discredit Ms. Cormier and to protect Mr. Asare.

63. The defendant did fail to take prompt, effective remedial action.

64. As a result, the plaintiff did suffer and continues to suffer damages.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

### Count V - Retaliation In Violation of Title VII

65. The plaintiff incorporates all previous paragraphs by reference as if fully stated herein.

66. The plaintiff did engage in a protected activity when she complained to her employer that she was subjected to a sexually hostile work environment in which unwanted and unwelcome sexual conduct was so severe and pervasive that a reasonable person would consider it intimidating, hostile, and/or abusive.

67. The defendant did retaliate against her by taking an adverse, material work action against her. Specifically, the defendant tried to force her to return to work in a hostile work environment and constructively discharged.

68. As a result, the plaintiff did suffer and continues to suffer damages.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

### CLAIMS AGAINST GEORGE ASARE

### Count VI – Sexual Harassment in Violation of M.G.L. c. 151B

69. The plaintiff incorporates all previous paragraphs by reference as if fully stated herein. The defendant did, through the facts described herein, subject the plaintiff to a sexually hostile work environment in which unwanted and unwelcome sexual conduct was so severe and pervasive that a reasonable person would consider it intimidating, hostile, and/or abusive.

70. The defendant did fail to take prompt, effective remedial action.

71. As a result, the plaintiff did suffer and continues to suffer damages.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

### Count VII – Retaliation in Violation of M.G.L. c. 151B

72. The plaintiff incorporates all previous paragraphs by reference as if fully stated herein.

73. The plaintiff engaged in a protected activity when she made a formal complaint about sexual harassment to her employer.

74. The defendant retaliated against her by subjecting her to an adverse and material work action by allowing the hostile work environment to continue. As a result, the plaintiff has suffered and continues to suffer damages.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

### Count VIII - Battery

75. The plaintiff incorporates all previous paragraphs by reference as if fully stated herein.

76. The defendant did intentionally touch the plaintiff's private parts without her consent or permission.

77. As a result, the plaintiff has suffered and continues to suffer damages.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

**Count IX - Intentional Infliction of Extreme Emotional Distress**

78. The plaintiff incorporates all previous paragraphs by reference as if fully stated herein.

79. The defendant did intentionally subject the plaintiff to conduct that was extreme, outrageous, shocking to the conscious, and utterly intolerable in civilized society that no reasonable person should be or could be expected to endure.

80. As a result, the plaintiff suffered extreme emotional distress that physically manifested in ways described herein, including but not limited to depression, sleeplessness, nightmares, lack of self-esteem, amongst other symptoms.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

**Count X - Tortious Interference With Advantageous Business Relationships**

81. The plaintiff incorporates all previous paragraphs by reference as if fully stated herein.

82. The plaintiff enjoyed an advantageous business relationship with her employer.

83. The defendant was aware of that relationship.

84. The defendant intentionally interfered with that relationship for illicit and improper reasons.

85. As a result, the plaintiff's employment was constructively terminated.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

### Count XI - Defamation

86. The plaintiff incorporates all previous paragraphs by reference as if fully stated herein.

87. The defendant did knowingly, intentionally, and with actual malice make statements about the plaintiff that he knew were false and/or that he reasonably should have known were false.

88. One or more of the false statements qualify as defamation per se.

89. As a result, the plaintiff suffered harm and continues to suffer harm.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

### Prayer for Relief

The Plaintiff respectfully requests that this Honorable Court enter judgment in her favor on all claims and:

1. Award her compensatory, special, and punitive damages;
2. Award her attorney's fees;
3. Enter any other equitable relief that this Court deems fair and just.

*Plaintiff demands a trial by jury on all claims so triable*.

**/s/ John T. Martin**
John T. Martin, BBO 676344
KJC Law Firm
One Exchange Place, 2nd Level
Worcester, MA 01608
617-720-8447
jmartin@kjclawfirm.com